**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MAUREEN MIRABELLA and** | : | |
| **JOHN MIRABELLA,** | : | |
| **Plaintiffs,** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **SUSAN VILLARD, *et al.*,** | : | |
| **Defendants.** | : | **No. 14-7368** |
| | : | |

**<u>MEMORANDUM</u>**

**Schiller, J.**                                                                                              **August 17, 2015**

Plaintiffs John and Maureen Mirabella have sued their neighbors, Susan and William Villard and Susan and Robert Braun (collectively, "Neighbor Defendants") with a variety of state law claims over the Neighbor Defendants' treatment of a town-owned open space adjacent to the Mirabellas' and Neighbor Defendants' properties. Plaintiffs also bring Equal Protection and First Amendment claims against Montgomery Township, the Montgomery Township Board of Supervisors ("Board"), and individual members of the Board of Supervisors Joseph P. Walsh, Michael J. Fox, Jeffrey W. McDonnell, Robert J. Birch, and Candyce Fluehr Chimera (collectively, "Municipal Defendants") over Municipal Defendants' treatment of the Mirabellas' complaints about Neighbor Defendants' actions. Neighbor Defendants and Municipal Defendants have filed separate motions to dismiss. For the following reasons, the Court grants Municipal Defendants' motion to dismiss the Equal Protection claim (Count VIII) and grants in part and denies in part the motion to dismiss the First Amendment claim (Count IX). The Court further grants Neighbor Defendants' motion to dismiss and dismisses all state law claims (Counts I – VII) for lack of supplemental jurisdiction.

## I.    BACKGROUND

The open space at the heart of the Complaint is apparently designated in local zoning ordinances as a natural area, not intended to be cleared or landscaped. (Compl. ¶¶ 14, 17.) It functions as a wooded, riparian buffer between a residential area and a sewage treatment plant. (*Id*.) Plaintiffs' and Neighbor Defendants' homes all border the open space on the residential side.

Plaintiffs claim that Neighbor Defendants were treating small sections of the open space as extensions of their backyards, clearing and mowing the open space and—in the case of the Villards—placing small structures on the land, including a shed, a fence, a playset, and a trampoline. (*Id*. ¶¶ 33-34, 50.) Plaintiffs complained, at first directly to the Neighbor Defendants and subsequently to the town, both verbally and in writing. (*Id*. ¶¶ 38-39, 44, 46-48.) The town responded by sending a letter to Plaintiffs, Neighbor Defendants, and others reminding them of the town code and policy prohibiting private mowing, clearing, or landscaping in the open spaces. (*Id*. ¶ 53.) The letter also stated that "the Township avoids approving and/or performing any area wide clearing of designated open space areas, and discourages/prohibits residents living adjacent to the open space areas from doing so." (*Id*.) The town eventually took down the Villards' fence and told them to move the other structures back from the open space to their own property. (*Id*. ¶ 50.) Both the Brauns and the Villards requested, in writing, permission from the town to mow or perform work on the open space in writing and the town denied the request in writing. (*Id*. ¶¶ 49, 51, 56-59.) Nonetheless, Neighbor Defendants continued to mow and clear the open space. (*Id*. ¶ 60.) Plaintiffs continued to complain to the town, including contacting Defendant Joseph Walsh, Chairman of the Board of Supervisors, to ask about raising the issue at the next public meeting. (*Id*. ¶ 62.) The town sent a cease and desist letter to the Villards. (*Id*.

¶ 65.) The Villards continued to mow and clear and also continued to advocate for permission to do so from the town, claiming that the Mirabellas' advocacy against their activities constituted a form of harassment. (*Id*. ¶¶ 67-69.)

Unbeknownst to Plaintiffs, town officials eventually asked the Villards to allow them to inspect the area in question. (*Id*. ¶ 71.) Some officials privately inspected the area and the Board of Supervisors heard their conclusions and discussed them in executive session. (*Id*. ¶¶ 74-75.) The town subsequently sent the Villards an email advising them that the Board of Supervisors had revised its earlier position and that the Villards would not be punished for mowing the section of open space at issue, but that no other cutting, clearing or landscaping would be allowed and no structures would be permitted on the area, which was to remain for public use. (*Id*. ¶ 77.) The Board advised John Mirabella of its decision on the same day. (*Id*. ¶ 79.) An exchange of letters and emails ensued between Plaintiffs and the Board. (*Id*. ¶¶ 81-86.) Plaintiffs continued to protest the Board's decision and questioned its legal validity. (*Id*.) The Board defended its decision and characterized the situation as "a dispute between contentious neighbors" more than a town property concern. (*Id*. ¶ 82.) The Board also denied Plaintiffs' request to put the matter on the agenda for the next Board meeting. (*Id*. ¶ 84.) On September 8, 2014, Plaintiffs attended a Board meeting and expressed their concerns in person, but the Board remained steadfast. (*Id*. ¶ 87.)

On September 20, 2014, Plaintiffs sent the Board a letter stating their intention to file this lawsuit against Neighbor Defendants and the town. (*Id*. ¶ 88.) Board members Walsh and McDonnell told Plaintiffs that the lawsuit was frivolous, that Plaintiffs lacked standing to sue, and that the town would seek sanctions if Plaintiffs actually filed suit. (*Id*. ¶ 89.) John Mirabella responded that Plaintiffs had standing and requested legal support for the town's position. (*Id*.

¶ 91.) Walsh wrote back, "Please direct all further communications to the Township attorney. Please never contact me, the Board of Supervisors or the Township employees directly. Do not call me at work, email me at work or speak to me in public or private. The dye is caste [sic]." (*Id*. ¶ 92, Ex. U.) Copied on the email chain were the rest of the Board, the Township Manager, the Planning and Zoning Director, and the Police Department. (*Id*.)

Plaintiffs subsequently attended another Board meeting on October 14, 2014. (*Id*. ¶ 93.) At the meeting, they expressed their concerns about the open space, their dismay at the threat to seek sanctions, and their outrage at Walsh's email telling them not to contact him or other officials. (*Id*. ¶¶ 93-94.) The town officials responded substantively to Plaintiffs' concerns at the meeting and defended their prior decisions. (*Id*. ¶ 95.)

## II.    STANDARD OF REVIEW

In reviewing a motion to dismiss for failure to state a claim, a district court must accept as true all well-pleaded allegations and draw all reasonable inferences in favor of the non-moving party. *See Powell v. Weiss*, 757 F.3d 338, 341 (3d Cir. 2014). A court need not, however, credit "bald assertions" or "legal conclusions" when deciding a motion to dismiss. *Anspach ex rel. Anspach v. City of Phila., Dep't of Pub. Health*, 503 F.3d 256, 260 (3d Cir. 2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"Factual allegations [in a complaint] must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. Although the Federal Rules of Civil Procedure impose no probability requirement at the pleading stage, a plaintiff must present "enough facts to raise a reasonable

expectation that discovery will reveal evidence of the necessary element[s]" of a cause of action. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Simply reciting the elements will not suffice. *Id.* (holding that pleading that offers labels and conclusions without further factual enhancement will not survive motion to dismiss); *see also Phillips*, 515 F.3d at 231. In deciding a motion to dismiss, the court may consider "allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

The Third Circuit has established a two-part analysis of a motion to dismiss for failure to state a claim. First, the legal conclusions and factual allegations of the claim should be separated, with the well-pleaded facts accepted as true but the legal conclusions disregarded. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Second, the court must make a common sense determination of whether the facts alleged in the complaint are sufficient to show a plausible claim for relief. *Id.* at 211. If the court can only infer the possibility of misconduct, the complaint must be dismissed because it has alleged—but failed to show—that the pleader is entitled to relief. *Id.*

## III.    DISCUSSION

The Court will first address the issues raised by Municipal Defendants' motion to dismiss Plaintiffs' federal claims, as those claims form the basis of the Court's jurisdiction.

### A.    Federal Claims Under § 1983

To state a cause of action under § 1983, a plaintiff must show that "(1) the defendants acted under color of [state] law; and (2) their actions deprived [the plaintiff] of rights secured by the Constitution or federal statutes." *Anderson v. Davila*, 125 F.3d 148, 159 (3d Cir. 1997).

### i. Municipal Liability Under Monell and § 1983

As a threshold matter, local governing bodies may only be sued directly under § 1983 where the allegedly unconstitutional action "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). A "custom or usage" may also qualify, even if not formally approved by the official decisionmaking body. *Id.* at 691. In addition, municipal liability may be based on the actions of a single official policymaker, if that person holds "final authority" to establish such policy. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986). Local governments may not be held liable under a respondeat superior theory of constitutional tort. *Monell*, 436 U.S. at 691.

Here, Plaintiffs have not alleged sufficient facts for municipal liability under *Monell*. Plaintiffs have made no claims that the actions taken against them were part of a larger official policy or ordinance, nor a general custom or usage. Although Walsh is the chairman of the Board, Plaintiffs have also not alleged that he has final policymaking authority for the Board or the Township. Plaintiffs have therefore failed to state claims under § 1983 against Defendants who are local governing bodies, the Board of Supervisors and Montgomery Township. Despite the failure of the parties to raise this issue, the Court will dismiss these claims.

### ii. Qualified Immunity for Individual Municipal Defendants

Individual Municipal Defendants have raised qualified immunity as a defense for their actions. "The doctrine of qualified immunity protects government officials 'from liability for

civil damages insofar as their conduct does not violate clearly established . . . constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan,* 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). There is a two-pronged test for analyzing a qualified immunity claim. *Id*. at 232. Under one prong, the Court determines whether a plaintiff has alleged a violation of a constitutional right. *Id*. Under the other prong, the Court determines whether the right at issue was "clearly established" at the time of the violation. *Id*. This Court has discretion to decide which of the prongs to address first. *Id*. at 236.

The Court will analyze Plaintiffs' constitutional claims within the context of the above test. As described below, the Court finds that Plaintiffs have failed to state a claim for violation of Equal Protection. For the most part, Plaintiffs' multiple First Amendment claims fail one prong or the other of the test for qualified immunity, but one category of claims—First Amendment violations predicated on conduct by Walsh and McDonnell after September 20, 2014—survives.

### iii.    *Count VIII: Equal Protection*

Plaintiffs have made a "class of one" claim under the Equal Protection Clause of the Fourteenth Amendment. This clause guarantees against "intentional and arbitrary discrimination" by state government. *Village of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000) (per curiam) (quotation omitted); *see* U.S. Const. amend. XIV. A "class of one" exists for equal protection purposes when a plaintiff "alleges that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id*. More specifically, a plaintiff must claim that "(1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006).

A subset of equal protection claims involves a failure to enforce the law in a uniform manner. To show such a failure-to-enforce claim, a plaintiff must allege not only that she requested that the law be enforced and was ignored, but also that a similar request made by a similarly situated person would not have been ignored. *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 193 (2d Cir. 1994).

The Mirabellas insist that they are not claiming a failure to enforce the town's ordinance in this case. (Reply of Pls.' to Defs.' Montgomery Twp. et al. Mot. to Dismiss Pls.' Compl. at 11-12.) They do not allege that they are similarly situated to another person requesting enforcement of this ordinance. Rather, Plaintiffs allege that they are a class of one and similarly situated to their neighbors, the Villards and the Brauns. They allege that all three households received letters prohibiting them from mowing the open space, and subsequently that the Villards and the Brauns received permission to mow the open space after some inspection and discussion with town officials. The problem with this formulation of the Mirabellas' equal protection claim, of course, is that the Mirabellas never sought permission to mow the open space adjacent to their property, nor is that the remedy they seek now. Thus, the Mirabellas are not similarly situated to the Villards and the Brauns in this key respect. The remedy the Mirabellas seek with their Complaint is not to be able to mow the open space themselves as their neighbors do, but to have the no-mowing ordinance enforced against their neighbors. The Mirabellas' equal protection claim may therefore only be pursued as a failure-to-enforce action, which the Mirabellas have expressly disclaimed. Formulated in any other way, the equal protection claim fails as a matter of law and will be dismissed.

> iv.    Count IX: First Amendment

Plaintiffs argue that their First Amendment rights—specifically, their right to petition the government and their right to access the courts—were infringed directly by Municipal Defendants and that Municipal Defendants retaliated against them for exercising their First Amendment rights, in violation of 42 U.S.C. § 1983.

The First Amendment guarantees the right "to petition the Government for a redress of grievances." U.S. Const. amend. I; *see also Gitlow v. New York*, 268 U.S. 652, 666 (1925) (incorporating First Amendment under Fourteenth Amendment to apply to the states). The First Amendment right to petition the government includes the right to access the courts. *Woodford v. Ngo*, 548 U.S. 81, 122 (2006). The First Amendment also guarantees the right to be free from retaliation by public officials for the exercise of these rights. *See Perry v. Sindermann*, 408 U.S. 593, 597 (1972) ("Such [retaliatory] interference with constitutional rights is impermissible.").

Plaintiffs here make both direct interference and retaliation claims in connection with their First Amendment rights to petition the government and to access the courts.

### a. Direct Interference: Right of Access to Courts

Unlike some other First Amendment claims, to state a direct interference claim for denial of access to the courts, a plaintiff must allege "actual injury," meaning the defendant "took or was responsible for actions that 'hindered [a plaintiff's] efforts to pursue a legal claim.'" *Beckerman v. Susquehanna Twp. Police & Admin.*, 254 F. App'x 149, 153 (3d Cir. 2007) (citation omitted) (alteration in original).

In this case, Plaintiffs did not allege that they were actually hindered in filing this lawsuit. On the contrary, they steadily pursued their path towards this litigation and filed their Complaint within months after notifying Defendants of their intent to do so. Plaintiffs therefore have not stated a claim for direct interference with their right of access to the courts.

### b.  Direct Interference: Right to Petition

Courts have analyzed the right to petition, by analog, under the same rubric as the First Amendment right to free speech. *Borough of Duryea, Pa. v. Guarnieri*, 131 S. Ct. 2488, 2500 (2011) (holding Speech Clause analysis to apply to Petition Clause claim and reversing Third Circuit as only court of appeals to have held otherwise); *id*. at 2498 ("A different rule for each First Amendment claim . . . would add to the complexity and expense of compliance with the Constitution."). As discussed below, this Court finds Speech Clause analysis sufficiently applicable to Plaintiffs' Petition Clause claims, in accordance with the modern trend.

The contacts that Plaintiffs describe initiating with their local elected officials—including reaching out by email, letter, in person, and attending and speaking at Board meetings—are all quintessential protected speech and petitioning activity under the First Amendment. *See White v. Lee*, 227 F.3d 1214, 1227 (9th Cir. 2000) (collecting cases). Plaintiffs claim that several of Municipal Defendants' actions directly interfered with their right to petition. (Compl. ¶¶ 191-203.) These actions include: that Defendants did not notify or invite Plaintiffs to the meeting with the Villards or to the executive session at which the Board discussed the open space; that Municipal Defendants decided to allow Neighbor Defendants to mow a section of the open space at the executive session; that Municipal Defendants ignored Plaintiffs' requests to put the issue on the agenda for a Board meeting; that Walsh and McDonnell threatened to seek sanctions in response to Plaintiffs' statement that they would sue; and that Walsh told Plaintiffs and many other town officials that Plaintiffs may never contact any town official publicly or privately except for the town attorney, in response to Plaintiffs' statement that they would sue.

Only Walsh's email telling Plaintiffs they may not contact any town officials comes close to a direct interference with Plaintiffs' right to petition the government. The threat to file for

legal sanctions is more appropriately discussed in the framework of retaliation for exercising a right to access the courts specifically, below. The other acts merely constitute denials of Plaintiffs' petitions to their local government, which themselves are not actionable as direct interference. *See, e.g.*, *Petersen v. Cazemier*, 164 F. Supp. 2d 1217, 1225 (D. Or. 2001) ("[The right to petition] does not mean that every petition for redress of grievances must be successful. . . . Plaintiff is not guaranteed redress, simply the right to seek it."). To the contrary, the Complaint alleges that the town was responsive to Plaintiffs' complaints until a town official actually saw the space in question, at which point Plaintiffs' requests began to be denied. That narrative is not an arbitrary one. Moreover, the First Amendment right to petition does not guarantee any particular procedure for considering informal, local government petitions of the kind Plaintiffs were making, and Plaintiffs' arguments to the contrary—for instance, that the First Amendment gave them a right to attend the viewing of the Villards' backyard, or rebut any arguments made there—are misplaced. Even if the First Amendment could possibly be construed to protect some of these activities, none are rights so clearly established that they would defeat Municipal Defendants' defense of qualified immunity.

Plaintiffs have stated a claim regarding Walsh's email. By its plain language, Walsh's email forbids Plaintiffs from contacting him, the Board, or town employees directly. (Compl. Ex. U.) As Plaintiffs note, many town officials were copied on the email. (*Id*.)

Municipal Defendants claim that Walsh's email must be read in the context of the Mirabellas' notification that they would file suit, as the email instructs the Mirabellas to "direct all further communications to the Township attorney." (*Id*.) They claim that this email "was nothing more than a direction that such communications would properly be directed to the Township attorney because the Plaintiffs had threatened a lawsuit." (Mot. to Dismiss at 25.)

However, this is not a complete description of Walsh's email. The email also goes on to say: "Please never contact me, the Board of Supervisors or the Township employees directly. Do not call me at work, email me at work or speak to me in public or private." (Compl. Ex. U.) This is significantly more than a direction to contact the town attorney regarding the lawsuit. This is a complete prohibition against Plaintiffs contacting town officials and employees for any reason.

Under the First Amendment, laws or other government regulations that target speech based on its content are presumptively unconstitutional. *Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218, 2226 (2015). Such a regulation is subject to strict judicial scrutiny and may only be justified if the government can prove that it is narrowly tailored to serve compelling state interests. *Id*. A regulation is facially content-based if it distinguishes speech based on its message. *Id*. at 2227. A regulation may also be content-based in more subtle ways, including if it distinguishes speech based on the speech's function or purpose; if the regulation "cannot be justified without reference to the content of the regulated speech"; or if the regulation was adopted by the government "because of disagreement with the message [the speech] conveys." *Id*. (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)). The Supreme Court's recent decision in *Reed*, which was issued after the parties briefed this motion, is particularly on point. In it, the Court clarified that regulations "favoring some speakers over others demand strict scrutiny when the . . . preference reflects a content preference." *Id*. (quotation omitted).

Here, Plaintiffs have adequately alleged that Walsh's email is a content-based restriction on speech. It distinguishes speech based on who is speaking—here, the Mirabellas—adopted because of a disagreement with the message conveyed. Defendants offer no justification for Walsh's email, much less one that meets the standard for strict scrutiny. The Court cannot find, and Municipal Defendants do not cite to, any authority for the proposition that they may properly

direct Plaintiffs to communicate only with the town attorney, and not with town officials, as a result of an impending lawsuit.

Moreover, Walsh's conduct is not absolved by qualified immunity. Although *Reed* issued recently, the law on content-based restrictions on speech was well established at the time of Walsh's email—as was the related law on speaker-based restrictions on speech. *See, e.g.*, *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 340 (2010) ("Prohibited, too, are restrictions distinguishing among different speakers, allowing speech by some but not others."); *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 658 (1994) ("[L]aws favoring some speakers over others demand strict scrutiny when the legislature's speaker preference reflects a content preference."). Plaintiffs' First Amendment direct interference claim, premised on Walsh's email, survives. Plaintiffs' direct interference claims premised on any other conduct are dismissed.

### c.  Retaliation Claims

Conduct by government officials that does not independently infringe on a plaintiff's constitutional rights may nonetheless be actionable as retaliation. *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000) (quotation omitted). To prove a retaliation claim, a plaintiff must show: "(1) that he engaged in constitutionally-protected activity; (2) that the government responded with retaliation; and (3) that the protected activity caused the retaliation." *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 282 (3d Cir. 2004). The standard for measuring retaliation is an objective one: it must be "sufficient to deter a person of ordinary firmness from exercising his constitutional rights." *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001) (quotation omitted). This threshold is "very low." *O'Connor v. City of Newark*, 440 F.3d 125, 128 (3d Cir. 2006).

However, not every restriction, even if retaliatory, is sufficient to chill the exercise of First Amendment rights; Plaintiffs must also show more than a *de minimis* inconvenience in

order to have an actionable claim for retaliation. *Brennan v. Norton*, 350 F.3d 399, 419 (3d Cir. 2003). "Determining whether a plaintiff's First Amendment rights were adversely affected by retaliatory conduct is a fact intensive inquiry that focuses on the status of the speaker, the status of the retaliator, the relationship between the speaker and the retaliator, *and the nature of the retaliatory acts*." *Brennan v. Norton*, 350 F.3d 399, 419 (3d Cir. 2003) (emphasis in original) (quoting *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 686 (4th Cir. 2000)).[1]

Plaintiffs allege a variety of conduct on behalf of Defendants that they claim was retaliatory. Such conduct includes: granting Neighbor Defendants permission to cut and clear the open space; making that decision in private; telling Plaintiffs that they had no standing to bring a lawsuit and that they would face a motion for sanctions if they did so; and Walsh's email, discussed above, telling Plaintiffs they may no longer contact local government except through the town attorney. Plaintiffs attached to the Complaint copies of relevant email exchanges between themselves and various town employees. (Compl. Exs. N-U.)

In examining the exhibits to the Complaint, the Court sees a clear change in tone and tenor of the communications from the township employees—in particular, Walsh—before and after September 20, 2014, when Plaintiffs advised the Board of their intent to sue. (*Id.* Ex. R.) For reasons similar to those discussed in the direct interference section above, the Court holds that Defendants' decision to not prosecute Neighbor Defendants for mowing the open space was not retaliatory, in substance or procedure. A reasonable person would not be chilled in exercising his or her First Amendment rights simply as a result of this adverse decision—a person who opposed the town's conduct at this point would have many avenues of First Amendment

---

[1] Although Third Circuit caselaw is sparse on the interplay between *Brennan* and *O'Connor*, the context-heavy *Brennan* approach is followed by a majority of circuits and informs the Court's decision here. *See Suarez Corp.*, 202 F.3d at 687 (collecting cases).

expression available to them, none of which were foreclosed or threatened by Defendants' decision. Indeed, Plaintiffs themselves pursued many forms of protest against Defendants' decision. Plaintiffs' complaints about the Board's procedure at this point are more adequately addressed by their state law claims, not by a First Amendment retaliation claim.

After Plaintiffs informed the Board they would file suit, Walsh sent an email stating that Plaintiffs had no standing to sue and promising to seek sanctions (Compl. Ex. S), followed shortly by his "never contact me" email, discussed above. (*Id*. Ex. U.) McDonnell apparently echoed the threat of sanctions at some point. (*Id*. ¶ 197.) These messages, which differ in both tone and substance from prior communications by the town, could be sufficient to deter an ordinary person from exercising his or her First Amendment rights. They are therefore properly characterized as retaliatory and Plaintiffs' retaliation claims based on these messages may proceed.

### B.      Supplemental Jurisdiction Over State Law Claims

Neighbor Defendants argue that this Court should dismiss Plaintiffs' claims against them, which are entirely based on state law. Federal courts are courts of limited jurisdiction. In order to exercise supplemental jurisdiction over state law claims, the "state-law claims must derive from a common nucleus of operative facts with the federal claims." *Lyon v. Whisman*, 45 F.3d 758, 760 (3d Cir. 1995); *see also* 28 U.S.C. § 1367 (defining supplemental jurisdiction).

Here, Plaintiffs' state-law claims include: claims against Neighbor Defendants for violations of town ordinances; claims against Neighbor Defendants for nuisance; claims against Municipal Defendants for violation of the public trust doctrine and the Donated or Dedicated Property Act; claims against Municipal Defendants for violating a provision of the Pennsylvania Constitution that provides for the preservation of public natural resources; and a claim against

Municipal Defendants for acting outside the power granted to them by the Pennsylvania Municipalities Planning Code. All of these claims are premised on Neighbor Defendants' conduct surrounding the open space and Municipal Defendants' reactions and decisions thereto. None are premised on Municipal Defendants' treatment of Plaintiffs themselves—in particular that conduct occurring after Plaintiffs notified Defendants of their intent to sue, which is the focus of the surviving First Amendment claims discussed above.

Plaintiffs' argument for supplemental jurisdiction over their state-law claims is based entirely on the existence of a common nucleus of operative fact with the federal claims this Court dismissed above, specifically the claims arising under the Equal Protection Clause. No remaining federal claims share a common nucleus of operative fact with Plaintiffs' state-law claims, or are "so related" that they form "part of the same case or controversy." § 1367. Accordingly, all of Plaintiffs' state-law claims are dismissed, without prejudice to filing these claims in state court.

## IV.    CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Defendants' motions to dismiss. An Order consistent with this Memorandum will be docketed separately.